## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOSEPH BARBOA,

        Petitioner,

vs.                                                Civ. No. 03-0594 MV/LCS

TIM LEMASTER, et al.,

        Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSTION

**THIS MATTER** is before the Court upon Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 filed November 14, 2003. Doc. 29. Respondents filed a Motion to Dismiss on December 17, 2003. Doc. 34. Petitioner is proceeding *pro se* and *in forma pauperis*. Upon consideration of the Amended Petition, the Motion to Dismiss, and the applicable law, the Court recommends that the Motion to Dismiss Amended Petition for Writ of Habeas Corpus be **GRANTED** and that the Amended Petition for Writ of Habeas Corpus with be **DISMISSED WITH PREJUDICE**.

**Proposed Findings**

**I.      Procedural Background**

1.      On May 16, 2003, Petitioner filed his original Petition for Writ of Habeas Corpus. Doc. 1. Respondents filed a Motion to Dismiss Petition for Writ of Habeas Corpus on July 10, 2003. Doc. 12. Petitioner filed a Motion to Amend his petition for writ of habeas corpus on August 19, 2003. (Doc. 18). The Court granted Petitioner's Motion on October 1, 2003 and required Petitioner

to file his Amended Petition for Writ of Habeas Corpus by October 20, 2003 and further allowed Respondents to refile their Motion to Dismiss by November 3, 2003.  Doc. 24.  The Court granted Petitioner's Motion to Extend Time to file his Amended Petition (Doc. 25) and gave Petitioner until November 10, 2003 to file his Amended Petition ( Doc. 26).  Petitioner filed his Amended Petition on November 14, 2003.  Doc. 29.  Respondents refiled their Motion to Dismiss, with supporting memoranda, on December 17, 2003. Docs. 34, 35.  Petitioner filed his Response, with supporting memoranda, on January 12, 2004.  Docs. 36, 37.  On February 27, 2004, the Court ordered Respondent to ensure that all state records be sent to this Court by April 26, 2004.  (Doc. 38).  The Record Proper was received on April 20, 2004.

## II.    Petitioner's State Court Proceedings

2.    On February 22, 2001,  Petitioner filed a civil rights action pursuant to 42 U.S.C. § 1983 alleging that Bernalillo County Sheriff's deputies used excessive force in effecting his arrest.[1]  A complete recitation of the underlying facts giving rise to Mr. Barboa's state and federal habeas corpus petitions can be found in the Magistrate Judge's Analysis and Recommended Disposition regarding the § 1983 action, filed December 12, 2002. [2]  In short, on or about March 17, 1998, Petitioner was being pursued by Bernalillo County Sheriff's deputies in connection with an apparent burglary at Jerry's Market in Bernalillo County.  RP 1-5.  Petitioner threatened serious injury to the officers and bystanders and as a result, the officers shot Petitioner between the eyes in order to prevent him from harming others.  *Id.*

---

[1] Note that this is the case styled *Joseph Barboa, aka, Joseph Sandoval, v. Scott Baird, Van Eldredge, A.N. Escalante, and Bernalillo County* and numbered CV 01-0210 WJ/LFG, United States District Court for the District of New Mexico.

[2] *See id.* at Doc. 61.  Note further that the Magistrate Judge's Opinion was adopted by the District Judge (Doc. 66) and Judgment was entered in favor of Defendants and against Plaintiff on all of Plaintiff's claims.  The District Court was affirmed on appeal (Doc. 80).

3.      On June 22, 1999, Petitioner entered a no contest plea  to aggravated assault upon a peace officer, aggravated  assault on a peace officer with a deadly weapon, commercial burglary, larceny, and the unlawful taking of a vehicle.  RP 80-84.  Petitioner is confined pursuant to the Judgment, Partially Suspended Sentence and Commitment of the Second Judicial District Court, dated October 13, 1999.  Answer Ex. A, RP 92-94.  Petitioner was sentenced by the Honorable W. John Brennan, District Judge, to ten years incarceration to be followed by two years on parole.  *Id.*

4.      On August 31, 1999, prior to sentencing, Petitioner filed a *pro se* Motion to Withdraw his Plea arguing that his counsel, Kathleen Rhinehart, Esq., was ineffective for failing to prepare his case and for failing to pursue the possibility that his plea was not a knowing, voluntary, and intelligent waiver of his right to trial.  Answer Ex. D, RP 86.  On June 15, 2000, Petitioner through counsel Edward O. Bustamante, Esq., filed a Motion to Set Conditions of Release and Withdraw Plea Agreement asking that Petitioner be able to withdraw his "unknowing and unintelligent plea in which he entered on June 22, 1999."  RP 109.  The Motion explains that Petitioner's *pro se* Motion to Withdraw His Plea, filed on August 31, 1999 had not been heard by the Court and remained without a setting.  RP 109-110.

5.      This Motion was heard before Judge Brennan on June 13, 2001.  RP 161.  The State presented evidence from the plea hearing wherein Petitioner stated that he did not have any problems understanding the hearing itself and that he did not feel that he was being forced into entering the plea.  Tr. 6/13/01 at 4-5.  Dr. Anne Rose, a forensic clinical psychologist, testified on behalf of Petitioner and stated that when Petitioner was shot in the head by police officers after a high speed car chase, Petitioner suffered some trauma to his brain as well as post-traumatic stress disorder.  *Id.* at 9, 20.  She explained that when she first met with him, he began in a coherent fashion and became

less and less coherent as the day wore on.  *Id.*  Further, Dr. Rose determined that Petitioner was heavily medicated.  *Id.*  She administered a Rorschach test and concluded that Petitioner was unable to function and that he showed signs of neurological impairment.  *Id.* at 11.  She further testified that she had conducted other tests that corroborated a finding of neurological impairment and that Petitioner's comprehension was lower than a fourth grade level.  *Id.* at 12-15.  Taking this into account, Dr. Rose stated that it would be impossible to know if he understood the plea unless he repeated it back in his own words.  *Id.* at 16-17.  Further, while Petitioner knew what his injuries were, Dr. Rose explained that he did not understand the consequences of those injuries.  *Id.* 26. Finally, she testified that all of her information leading up to the plea agreement was based on Petitioner's self-reporting.  *Id.* at 30.

6.       Dr. John Howard Gatling, a psychologist, testified on behalf of the State.  He stated that in his report he documented that Petitioner had no specific mental problems, was able to answer questions without hesitation, and seemed to be able to concentrate on questions that were asked to him.  *Id.* at 34-35.  Dr. Gatling stated that some of the tests he performed did suggest there could be borderline neurological impairment but that the results of the tests did not suggest that the Petitioner would have been unable to understand his plea.  *Id.* at 39-41.  Dr. Gatling indicated that Petitioner said that by March 1999, three months before he entered into his plea agreement, he had fully recovered from the gunshot and that he did not have any inability to make decisions.  *Id.* 42-43. Further, Dr. Gatling performed a test on Petitioner regarding his knowledge of the legal system as it pertained to his situation.  *Id.* at 47.  Dr. Gatling found that Petitioner had a good understanding of the charges against him, available defenses, courtroom procedures, as well as capacity to testify.

*Id.* at 48.  Finally,  Dr. Gatling stated that he had no evidence that would suggest that Petitioner was incompetent when he entered his plea agreement or when he was sentenced.  *Id.* at 49-50.

7.     Kathleen Rhinehart, who has some 12 years of criminal defense experience, also testified as to her communication with Petitioner; she stated that throughout their meetings he consistently appeared to understand the case and was able to give her information in an intelligent manner.  *Id.* at 63, 66-71.  She expressed that she never thought he did not understand what was happening in the case and that if she had thought that he did not understand, she would have had him evaluated as she has had done with previous clients.  *Id.* at 66, 75-76.  After hearing the testimony of Dr. Rose, Dr. Gatling and Ms. Rhinehart, the presiding judge denied Petitioner's Motion to Withdraw his Plea.  Tr. 6/13/01 at 89, RP 168.

8.     On June 21, 2001, Petitioner, through counsel Edward O. Bustamante, Esq., filed a Motion to Reconsider Sentence on the grounds that there were "additional matters not presented at the previous hearing [Petitioner] requests the Court to consider."  Answer Ex. J, RP 169.  On August 24, 2001, Petitioner filed a *pro se* Motion for Dismissal on the grounds that he was denied access to telephone, mail and jail visits, that his right to a speedy trial was violated, that his counsel was ineffective, and finally that he was incompetent at the time of his plea.  Answer Ex. K, RP  173-174.  The Motion to Withdraw Plea/Motion to Dismiss was denied by Order of the Court on September 10, 2001.  Answer Ex. L, RP 178-79.  Petitioner's Motion to Reconsider Sentence was denied on September 24, 2001.  Answer Ex. M, RP 186.

9.     On November 7, 2001, Petitioner filed a *pro se* petition for writ of habeas corpus in the Bernalillo County District Court.  Answer Ex. O, RP 187-246.  He raised seven claims. First, he claimed was that he was denied various rights when indicted by the state grand jury, including his

5

right to counsel and his right to be served with a summons to appear before a grand jury.  RP 194.

His second claim was in regard to bond fofeiture.  RP. 205-06.  The third claim was for ineffective

assistance of counsel in which he alleged that Ms. Rhinehart did not communicate with him, did not

"investigate the facts," or interview witnesses, and did not explain possible defenses that were

available to him.  RP 210, 211.  His fourth claim was that he was mentally incompetent when he

entered into his plea and that counsel failed to explore this issue.  RP 216.  Petitioner's fifth claim for

writ of habeas corpus was that counsel was ineffective for failing to pursue pretrial motions such as

motion for a change of venue.  RP 221, 222.  His sixth claim was that his right to a speedy trial was

violated.  R. 226.  His seventh claim was that he was denied the right to appeal his Motion to

Withdraw Plea and Set Conditions of Release.  RP 229.  On December 19, 2001, Petitioner filed a

notice of appeal from the denial of his Motion to Withdraw Plea and Set Conditions of Release.

Answer Ex. P, RP 268.  By Order of December 19, 2001, the trial court deemed Petitioner's appeal

timely even though it was not filed within thirty days after the Court's denial of his Motion to

Withdraw Plea Agreement and Set Conditions of Release.  Answer Ex. Q, RP 271.

       10.     On February 18, 2002, the New Mexico Court of Appeals assigned the case to its

summary calendar and proposed to affirm the lower court's denial of Petitioner's Motion to

Withdraw Plea and Review Conditions of Release.  Answer Ex. S, RP 275-279.  The Court of

Appeals highlighted Petitioner's primary contention that due to prior serious head trauma, he was

unable to make intelligent choices about his plea.  RP 276.  The Court noted that a hearing had been

conducted at the trial court level and both parties had presented expert testimony.  RP 277.  It then

proposed to affirm on the grounds that it was within the trial court's discretion to reject Petitioner's

expert testimony and to accept that of the State and it could find no abuse of discretion.  *Id.*

Petitioner, through counsel, filed a memorandum in opposition to the proposed affirmance. Answer Ex. T. On June 6, 2002, the New Mexico Court of Appeals affirmed the lower court's denial of Petitioner's Motion to Withdraw Plea and Review Conditions of Release on the same grounds as outlined in the proposed affirmance. Answer Ex. U, RP 298-300. Petitioner sought review by the Supreme Court of New Mexico which was denied by Order of July 15, 2002. Answer Ex. V, W, RP 324.

11.     On March 1, 2002, Petitioner filed a second *pro se* petition for writ of habeas corpus in state court. Answer Ex. Y, RP 280-285. Petitioner again underscored the ineffective assistance of counsel issue he outlined in his first petition, the grand jury problem, and claimed that his plea was unknowing and involuntary. RP. 282. On March 1, 2002, by Order of the District Court, relief was denied on the ground that "these issues were fully presented to the Court . . . and the Court found no merit in the allegations." Answer Ex. Z, RP 293-294.

12.     Petitioner filed a third *pro se* petition for writ of habeas corpus in state court on September 16, 2002, repeating the same issues as in his previous petitions. Answer Ex. AA, RP 302-307. On April 18, 2003, Judge Brennan denied relief on the ground that "Petitioner has asserted the same claims (with minor variations) over and over again during his Sentencing, his Motion for a New Trial, and his previous petition for post-conviction relief. These claims are frivolous and have no merit as I have previously ruled." Answer Ex. BB, RP 410-11.

### III.    Petitioner's Federal Petition and Respondent's Motion to Dismiss

13.     Petitioner's convictions became final on July 15, 2002 after denial of certiorari by the New Mexico Supreme Court (Answer Ex. W, RP 324). *See Rhine v. Boone*, 182 F.3d 1153, 1156 (10th Cir. 1999)(holding that a state post conviction proceeding is final after the state's highest court

has addressed the application for purposes of § 2254(d)(2)).  The one-year limitation period for filing

a federal habeas corpus petition began to run on that date.  28 U.S.C. § 2244(d)(1)(A).  Thus, the

original § 2254 petition, filed May 16, 2003 (Doc. 1), was filed within one year of July 15, 2002 and

is timely.

       14.     In his Amended federal petition, filed November 14, 2003, Petitioner sets forth the

following claims: first, the correctional facility failed to provide medical treatment to accommodate

his brain injury; second, his plea was not knowing and voluntary, as it was obtained while he was

mentally incompetent and as a result, he was denied effective assistance of counsel by both Ms.

Rhinehart and Mr. Bustamante; third, Mr. Bustamante failed to file an appeal from the trial court's

denial of Petitioner's Motion to Withdraw Plea; fourth, Mr. Bustamante failed to provide Petitioner

with grand jury tapes; fifth, Mr. Bustamante failed to supply Petitioner with his medical records; sixth,

Mr. Bustamante failed to pursue an ineffective assistance of counsel claim against Ms. Rhinehart;

seventh, Mr. Bustamante failed to question Petitioner's ten year sentence; eighth, Ms. Rhinehart failed

to examine potential defenses; ninth, Ms. Rhinehart failed to research proper facts as well as law and

policies regarding use of deadly force; tenth, Ms. Rhinehart and Mr. Bustamante failed to interview

witnesses; eleventh, Ms. Rhinehart failed to pursue a motion to change venue; twelfth, there were

various deficiencies in the grand jury process and finally, Petitioner's bond was improperly forfeited.

Doc. 29.  Petitioner appears to have abandoned one of his claims from his state habeas petitions, and

that is his right to a speedy trial.  Answer Ex. O, RP 187-246.

       15.     In the Motion to Dismiss filed on December 17, 2003, Respondents argue that the

Petitioner's Application be dismissed on each of his claims because Petitioner failed to exhaust his

claims in state court, and for those claims that were fully exhausted, Petitioner had not demonstrated

that he is entitled to relief under 28 U.S.C. § 2254.  Doc. 35.  Respondents urge that such dismissal be with prejudice.  *Id.*

### A.  Exhaustion with regard to 42 U.S.C. § 1983

16.  To the extent that Petitioner alleges that he is receiving poor medical treatment while incarcerated, he is alleging a violation of his eighth amendment rights pursuant to 42 U.S.C. § 1983, and is thus not asserting a claim that is cognizable under 28 U.S.C.§ 2254.[3]  Further, in order to make a § 1983 claim, Petitioner must follow the prison adminstrative process for filing such a claim and must avail himself of administrative remedies.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).  The court will not address this claim as it is not cognizable under 28 U.S.C. § 2254 nor has Petitioner followed the process outlined in *Booth*.  *Id.*

### B.  Unexhuasted Claims

### Ineffective Assistance of Counsel by Mr. Bustamante

17.  A habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254.  *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000)(citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)(requiring state prisoner bringing habeas corpus action to show that he exhausted available state remedies) *and Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992)).

18.  Petitioner's claims regarding ineffective assistance of counsel by Mr. Bustamante have not been presented in state court.  Because Petitioner failed to present these claims to the highest state court having jurisdiction, he has failed to exhaust his state remedies.  A federal habeas corpus

---

[3] To the extent that Petitioner alleges that Mr. Bustamante should have pursued a § 1983 action and failed to, this would be actionable as a malpractice suit.

petition on behalf of a state prisoner "shall not be granted" unless the petitioner has exhausted his state court remedies.  28 U.S.C. §2254(b)(1)(A).  When the court is "faced with a habeas petition containing unexhausted claims [it] may either (1) dismiss the entire petition without prejudice in order to permit exhaustion of state remedies, or (2) deny the entire petition on the merits."  *Moore v. Schoeman*, 288 F.3d 1231, 1232, 1235 (10th Cir. 2002)(citing *Rose v. Lundy*, 455 U.S. 509, 510 (1982) 28 U.S.C. § 2254(b)(2)).  Because Petitioner's claims of ineffective assistance of counsel with regard to Mr. Bustamante are meritless, as will be discussed further below, the court recommends denying the entire petition on the merits.

19.     Petitioner raises seven ineffective assistance of counsel claims with regard to Mr. Bustamante.  Doc. 29.  First, Mr. Bustamante failed to file an appeal from the trial court's denial of his Motion to Withdraw Plea.  Doc. 29 at typed page 3.  Second, he failed to provide Petitioner with grand jury tapes.  *Id.*  Third, he failed to raise the issue of Petitioner's competency.  Doc. 29 at 50-51.  Fourth, he failed to interview witnesses such as Petitioner's mother, sister, and brother.  *Id.* at 51.  Fifth, Mr. Bustamante failed to supply Petitioner with his medical records.  *Id.*  Sixth, he failed to pursue an ineffective assistance of counsel claim against Ms. Rhinehart.  *Id.* at 52.  Petitioner's seventh and final claim against Mr. Bustamante is that he failed to question his ten year sentence.  *Id.*  Petitioner's third and fourth claims, regarding his competency and counsel's failure to interview witnesses are fully discussed below with regard to  Ms. Rhinehart; as such, the court will not address them twice.

20.     The test for making a claim of constitutionally ineffective assistance of counsel was set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must satisfy a two-part test in order to prevail on an ineffective

assistance of counsel claim. *Strickland*, 466 U.S. at 687-88. First, the petitioner must demonstrate that his attorney's "performance was deficient" and "fell below an objective standard of reasonableness." *Id.* In applying this test, the Court must give considerable deference to an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. In applying the *Strickland* test, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To succeed under the first prong, a petitioner must overcome the presumption that counsel's conduct was constitutionally effective. *Hung Thanh Le v. Mullin*, 311 F.3d 1002, 1025 (10th Cir.2002). For counsel's performance to be constitutionally ineffective, it must have been "completely unreasonable, not merely wrong . . . ." *See Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995)).

21.     Second, a habeas petitioner must demonstrate that the trial counsel's deficient performance prejudiced him, which requires a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

22.     The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). As the Supreme Court noted in *Hill*, "[i]n the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more

than a restatement of the standard of attorney competence already set forth . . . . The second, or 'prejudice,' requirement, on the other hand focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474. U.S. at 58-59 (internal citations omitted).  The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Fields v. Gibson*, 277 F.3d 1203, 1213 (10th Cir. 2002)(quoting *Hill*, 474 U.S. at 56).  Further, the benefit conferred to a defendant by pleading guilty is a factor that weighs in favor of plea being voluntary and it also serves as evidence that defendant would not have proceeded to trial.  *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001).

23.     Petitioner's first claim of ineffective assistance of counsel that Mr. Bustamante did not file an appeal from the trial court's denial of Petitioner's Motion to Withdraw Plea is wholly without merit.  Mr. Bustamante did file an appeal.  RP. 268.  Further, the New Mexico Court of Appeals treated the appeal on its merits and affirmed the trial court's decision on the ground that it was within the trial court's discretion to reject Petitioner's expert testimony and to accept that of the State.  RP 298-300.  Petitioner fails to show that Mr. Bustamante's performance was objectively unreasonable.  Moreover, Petitioner could not have been prejudiced by Mr. Bustamante's failure to file an appeal since Mr. Bustamante clearly did file an appeal.  Thus, Petitioner fails to meet either prong of the *Strickland* standard and this claim should be dismissed.  *Strickland*, 446 U.S. at 687-88, 694.

24.     As to Petitioner's claims that Mr. Bustamante failed to provide him with grand jury

tapes and medical records, [4] as well as his claim that Mr. Bustamante failed to pursue an ineffective

assistance of counsel claim against Ms. Rhinehart, each of these claims also fail to meet the *Strickland*

standard.   *Strickland*, 446 U.S. at 687-88, 694.   Petitioner fails to explain with any sense of

particularity how Mr. Bustamante's performance was objectively unreasonable or deficient with

regard to any of these claims.   *Id.* at 687-88.   The court also notes that it must give considerable

deference to an attorney's strategic decisions.   *Id.* at 690.   Therefore, if Mr. Bustamante thought

Petitioner's claim of ineffective assistance of counsel against Ms. Rhinehart was meritless (as I have

determined it was) and sought not to pursue it as a result, the court must give deference to this

decision.   *Id.*   Further, assuming that Mr. Bustamante's performance was objectively unreasonable,

Petitioner fails to meet the prejudice prong of *Strickland* and *Hill*; that is he never alleges that he

would not have pleaded guilty and would have instead insisted on going to trial.   *Id.* at 694; *Hill*, 474

U.S. at 59.   Nor does he present any factual basis therefor.   *Id.*   Petitioner clearly fails to meet the

*Strickland* standard. *Strickland*, 466 U.S. at 687-88, 694.

25.     Petitioner's seventh and final claim against as to Mr. Bustamante is that he failed to

question his ten year sentence at the hearing for the Motion to Withdraw his Plea.   Again, Petitioner

fails to meet the *Strickland* test.   *Id.*   The plea agreement makes clear that Petitioner could be

sentenced up to 17 years.   RP. 82.   At sentencing, Judge Brennan, in addition to asking whether

Petitioner understood the plea and entered into it voluntarily, also asked whether Petitioner

understood that he could sentence him to between 8 and 17 years of incarceration.   Tr.6/22/99 at 2.

Petitioner answered affirmatively to all questions.   *Id.*   Further, Judge Brennan indicated that

---

[4] The Court also notes that Petitioner was provided copies of Dr. Rose's evaluation by Order on December 4, 2003 (Doc. 33).

Petitioner would receive no more than ten years of incarceration.  *Id.*   Because Petitioner was sentenced to a period of incarceration that was within the limits of the plea agreement, Mr. Bustamante was not ineffective for failing to argue for a sentence shorter than ten years.  In sum, all of Petitioner's ineffective assistance of counsel claims against Mr. Bustamante fail to meet the *Strickland* standard and should be denied.  *Strickland*, 466 U.S. at 687-88, 694.

### C.    Exhausted Claims: State Court Decision on the Merits

26.    Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a writ of habeas corpus may not be issued with respect to any claim adjudicated on the merits in the state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  A state court decision will be "contrary to" federal law if the state court either applies a rule that contradicts the Supreme Court on a question of law or if the state court decides a case differently on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court decision will be an "unreasonable application of" federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 409.  Even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.  *Id.*   Further, a federal court "cannot grant relief under AEDPA by conducting [its] own independent inquiry into whether the state court was correct as a *de novo* matter.  A federal habeas court may not issue the writ simply because that court concludes in its

14

independent judgment that the state-court decision applied the law incorrectly." *Yarborough v. Alvarado*, 124 S. Ct. 2140, 2150 (2004).[5]  In short, the AEDPA bars a federal habeas court from granting relief unless the state court decision involves either 1) application of incorrect legal standards or principles; or 2) an objectively unreasonable application of the correct legal standard or principle. Finally, Petitioner bears the burden to establish by clear and convincing evidence that the state court determination was incorrect.  28 U.S.C. § 2254(e)(1).

### Competency at time of Plea and Corresponding Ineffective Assistance of Counsel Claim

27.    Plaintiff claims that he was incompetent at the time of his plea and as a result, he suffered ineffective assistance of counsel because both Ms. Rhinehart and Mr. Bustmante failed to raise the issue of his medical condition when he entered his plea agreement.  As outlined in detail above, in order to prevail on an ineffective assistance of counsel claim, Petitioner must show both that counsel's performance fell below an objective standard of reasonableness and that Petitioner was prejudiced thereby.  *Strickland*, 466 U.S. at 687-88, 694.  In guilty plea cases, a showing of prejudice requires Petitioner to show "that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.  Further, it is not enough for a  federal habeas court to be convinced that the state court applied *Strickland* incorrectly; as indicated above, the state court's decision must have been objectively unreasonable.

As the Supreme Court has noted:

Under § 2245(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly.  The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and

_____

[5] Note that this has substantially been the position of the Tenth Circuit since 2003.  *See McLuckie v. Abbott*, 337 F.3d 1193 (10th Cir. 2003).

authorizes federal-court intervention only when a state-court decision is objectively unreasonable.

*Woodford v. Visciotti*, 537 U.S.19, 27 (2002).  Moreover, "it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.  An 'unreasonable application of federal law is different from an incorrect application of federal law.'"  *Id.* at 25 (citing *Williams*, 529 U.S. at 410).  The Court must "presume state court factual findings are correct, absent clear and convincing proof to the contrary."  *Romano v. Gibson*, 278 F.3d 1145, 1150 (10th Cir. 2002)(citing 28 U.S.C. § 2254(e)(1)).  The burden is thereafter placed on the petitioner to rebut that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1);  *Hooper v. Mullin*, 314 F.3d 1162, 1167 (10th Cir. 2002).

28.    At the hearing wherein Petitioner entered his no contest plea, the presiding judge asked Petitioner whether he had an opportunity to discuss his plea with Ms. Rhinehart and whether she fully explained the plea arrangement with him.  Tr. 6/22/99 at 2.  Petitioner answered in the affirmative to both questions.  *Id.*  Petitioner was further asked whether he felt he was being forced into entering the plea, to which he indicated he did not feel forced.  *Id.* at 2-3.  After Petitioner stated that he had been shot between the eyes during the incident, the Court asked Petitioner whether he had any problems understanding what was happening.  *Id.* at 3.  Petitioner indicated that he did not have any difficulty understanding, and Ms. Rhinehart went on to state that she did not seek a forensic evaluation with respect to competency because she had always felt that Petitioner understood what was happening.  *Id.* at 3-4.  When asked whether he had any questions about his plea and disposition agreement, Petitioner stated that he did not have any questions.  *Id.* at 9.  The Court then found that Petitioner "knows and understands what he's doing."  *Id.*

29.     At the hearing on Petitioner's Motion to Withdraw his Plea, the Court found Petitioner

to be competent based on the expert testimony, the fact that Ms. Rhinehart did not seek a

psychological evaluation since it appeared that Petitioner understood the legal proceedings, and that

Petitioner was able to assist Ms. Rhinehart in his defense. Tr. 6/13/01 at 88-89.  Also at that hearing,

the presiding judge expressed that he was particularly concerned at the time Petitioner entered his

guilty plea and stated to Petitioner, "I did listen carefully to you at the time of your plea because I was

concerned about your injury.  I know [previous counsel] did not request any kind of psychological

evaluation nor did Ms. Rhinehart.  And I think the reason they didn't discuss it is they felt that you

knew what was going on.  I think that letter that Ms. Rhinehart received from you corroborated the

fact that you understood what was going on." *Id.* at 88.  Thus, Petitioner's Motion to Withdraw his

Plea was denied and because Petitioner was competent, Ms. Rhinehart did not render ineffective

assistance of counsel for not raising the issue of his medical condition when he entered his plea

agreement.  Further, Petitioner made no reference to the prejudice prong of the *Strickland* test as

outlined in *Hill*; that is, he never suggested that but for counsel's errors he would not have pleaded

guilty and would have insisted on going to trial.   *Hill*, 474. U.S. at 59 (internal citations omitted).

Further, Petitioner benefited greatly by pleading guilty since his sentencing exposure was greatly

reduced, which suggests that he would not have insisted on going to trial as required by *Hill*.  RP.

80-84;  *Champion*, 262 F.3d at 1072;  *Hill*, 474 U.S. at 59 (internal citations omitted).  As such,

Petitioner fails to meet either prong of the *Strickland* test.  *Strickland*, 466 U.S. at 687-88, 694.

30.     As noted above, in its Memorandum Opinion, filed July 6, 2002, the New Mexico

Court of Appeals affirmed the trial court's denial of Petitioner's Motion to Withdraw Plea and

Review Conditions of release on the ground that it was well within the trial court's discretion to reject

Petitioner's expert testimony and to accept that of the State and to find Petitioner to be competent. Answer Ex. U, RP 298-300.  Further, Mr. Bustamante was not ineffective for not pursuing the issue of Petitioner's competency since the issue had been fully adjudicated and Petitioner was found to be competent.  As such, Petitioner clearly fails to meet either prong of the *Strickland* test with regard to Mr. Bustamante.  *Strickland*, 466 U.S. at 687-88, 694.

  31.  Neither the trial court's conclusions nor those of the New Mexico Court of Appeals were contrary to clearly established federal law; further, they did not they involve an unreasonable application of clearly established federal law.  *Fields*, 277 F. 3d at 1217.  This Court must "presume state court factual findings are correct, absent clear and convincing proof to the contrary." *Romano*, 278 F.3d at 1150 (citing 28 U.S.C. § 2254(e)(1)).  A review of the record indicates that Petitioner has failed to rebut that presumption with clear and convincing evidence. *Hooper*, 314 F.3d at 1167. To be constitutionally ineffective, the conduct of Petitioner's trial counsel "must have been completely unreasonable, not merely wrong." *Moore v. Gibson*, 195 F.3d 1152, 1178 (10th Cir. 1999)(citing *Hoxsie*, 108 F.3d at 1246).  Ms. Rhinehart, an experienced criminal defense lawyer, expressed that she had met with Petitioner many times with regard to his case and never felt that he did not understand what was happening.  Tr. 6/13/01 at 65-67.  Petitioner's claims were presented fully at the hearing  for the Motion to Withdraw Plea.  In making his finding, the presiding judge applied the proper constitutional standard and his findings on the merits do not constitute an unreasonable application of federal law.  *Fields*, 277 F. 3d at 1217.  Substitution of the federal court's judgment for that of the state court would contravene the AEDPA's statutory mandate. *Yarborough*, 124 S. Ct. at 2150, *and McLuckie v. Abbott*, 337 F.3d 1193 (10th Cir. 2003).  Even if my opinion was contrary to Judge Brennan's, it would be inappropriate to substitute this court's

opinion for his.  *Id.*  As such, Petitioner is not entitled to relief on his claim that he was incompetent and that he suffered ineffective assistance of counsel when counsel failed to raise the issue of competency when he entered his plea agreement.

> **Remaining Ineffective Assistance of Counsel Claims:**
> **Failure to Examine Defenses, Failure to Research Law and Facts, Failure to Pursue Motion to Change Venue, and Failure to Interview Witnesses**

32.      Petitioner's ineffective assistance claims in addition to the previously discussed competency issue are: Ms. Rhinehart failed to examine potential defenses; she failed to research proper facts and law regarding use of deadly force; she failed to pursue a motion to change venue, and both Mr. Bustamante and Ms. Rhinehart failed to interview witnesses.  As outlined above, Petitioner must show by clear and convincing evidence that state court was incorrect regarding each of these ineffective assistance counsel claims.  *Hooper*, 314 F.3d at 1167.   In short, he must show that each claim meets the *Strickland* standard which requires first that counsel's performance be deficient and second, that as a result of counsel's deficient performance, Petitioner was prejudiced, meaning that he would not have pleaded guilty and would have insisted on going to trial.  *Strickland*, 466 U.S. at 687-88, 694;  *Hill*, 474 U.S. at 59.

33.      A federal court owes deference even to a summary decision by a state court if the decision was reached on substantive rather than procedural grounds, unless the state court decision contravenes clearly established federal law.  *See Aycox v. Lytle*, 196 F.3d 1174,1177-78 (10th Cir. 1999); *and Van Woudenberg v. Gibson*, 211 F.3d 560, 569 (10th Cir. 2000) (noting that "while its treatment of the issue was cursory, the state court indicated it was disposing of the claim on the merits").  Each of the above ineffective assistance of counsel claims  were disposed of in Petitioner's first two state habeas petitions on the ground that "these issues were fully presented to the Court

[during the hearing for Petitioner's Motion to Withdraw Plea] . . . and the Court found no merit in the allegations."  Answer Ex. Z, RP 293-294.  These claims were again raised in Petitioner's final state habeas petition and were again disposed of on the ground that "Petitioner has asserted the same claims (with minor variations) over and over again during his Sentencing, his Motion for a New Trial, and his previous petition for post-conviction relief.  These claims are frivolous and have no merit as I have previously ruled."  Answer Ex. BB, RP 410-11.  The record suggests that the state court treated Petitioner's claim on the merits.  As such, the state court decision shall be given deference unless it contravenes clearly established federal law.  *Aycox*, 196 F.3d at 1177-78.  As discussed further below, Petitioner fails to show through clear and convincing evidence that the state court decision contravenes federal law to wit, *Strickland v. Washington*, 466 U.S. at 687-88, 694.  Therefore, I recommend that the petition for writ of habeas corpus with regard to Petioner's claims of ineffective assistance of counsel regarding Ms. Rhinehart's failure to examine potential defenses, her failure to research relevant law and facts, her failure to pursue a motion for change of venue, and Ms. Rhinehart's and Mr. Bustamante's failure to interview witnesses be denied.

34.     Petitioner claims that Ms. Rhinehart was ineffective for failing to discuss potential defenses with him, for failing to investigate the facts and the law, for failing to seek a change of venue, and that both Ms. Rhinehart and Mr. Bustamante were ineffective for failing to interview witnesses.  Doc. 29.  After a review of the Petitioner's Amended Complaint, Petitioner states that Ms. Rhinehart did not "discuss any statutory defenses with [him] before trial," that "Ms. Rhinehart did not seriously investigate the facts in the case," that she did not adequately review the law regarding the use of deadly force or the supplemental police reports and that due to pretrial publicity, Ms.

Rhinehart was "ineffective in failing to at least argue the motion for change of venue."[6] *Id.* at 34-35, 38-39, 49.  As for failing to interview witnesses, Petitioner lists witnesses including, Mr. Phillip Padilla, who would allegedly say that he did not injure any deputies, and Ms. Doti Morales and Mr. Larry Garcia, who would state that Petitioner was not endangering the life of an officer. *Id.* at 35-36.

35.     Each of these claims of ineffective assistance of counsel fail to meet the first prong of the *Strickland* test; that is, Petitioner has failed to show that Ms. Rhinehart's "performance was deficient" or "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. As discussed earlier, at the plea hearing Petitioner expressed that Ms. Rhinehart had fully explained the plea agreement to him and that he did not feel that he was being forced into entering the plea. Tr. 6/22/99 at 2-3. Further, at sentencing, Ms. Rhinehart presented the facts to Judge Brennan in a light most favorable to Petitioner and explained that the Bernalillo County Sheriff's deputies improperly used deadly force against Petitioner. Tr. 8/26/99 at 7-9. Thus, the record indicates that Ms. Rhinehart did investigate both the facts and the law regarding the use of deadly force. Moreover, Petitioner does not indicate what sort of defenses Ms. Rhinehart should have argued on his behalf and he also does not meet his burden in showing that a failure to raise a motion for change of venue was "completely unreasonable." *Hoxsie*, 108 F. 3d at 1246 (internal citation omitted). With regard to witnesses, Petitioner presents no sworn testimony from potential witnesses and there is no guarantee that they would have stated what he says they would have. *See Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990). The Court again notes that the Court must give considerable deference to

---

[6] The Court notes that if a motion to change venue was filed on behalf of Petitioner and the trial court denied such a motion, the Petitioner would have had to demonstrate either actual prejudice or a presumption of prejudice as a result of the denial. *Brecheen v. Reynolds*, 41 F.3d 1343, 1351 (10th Cir. 1994). In order to show prejudice, Petitioner would have to point to some sort of proof such as "actual hostility or impartiality by the jurors." *Id.* Moreover, Petitioner pled guilty and waived the issue.

an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Petitioner fails to meet his burden under the first prong of the *Strickland* test.  *Id.* at 687-688.

36.      Even if the Court assumes that Ms. Rhinehart's and Mr. Bustamante's performance was deficient and fell below an objective standard of reasonablness, each of Petitioner's claims fails the second prong of the *Strickland/Hill* test where the burden remains with Petitioner to show that he would not have pleaded guilty and would have insisted on going to trial.  *Strickland*, 466 U.S. at 694; *Hill*, 474 U.S. at 59.  In only one of his ineffective assistance of counsel claims does Petitioner assert that he would not have pleaded guilty and would have instead gone to trial and that is his claim that counsel should have moved for a change of venue.  Doc. 29 at 49.  The rest of Petitioner's ineffective assistance of counsel claims fail to assert that he would not have pleaded guilty and instead would have gone to trial, and thus, they clearly fail to meet the prejudice prong as required by *Strickland*.  *Strickland*, 466 U.S. at 694.  Even though he claims he would have gone to trial had Ms. Rhinehart argued for a change of venue, Petitioner's "mere allegation that he would have insisted on trial but for his trial counsel's errors, although necessary, is ultimately insufficient to entitle him to relief."  *Champion*, 262  F.3d at 1072 (citation omitted).  The Court must look at the factual circumstances surrounding the plea to determine whether Petitioner would have proceeded to trial.  *Id.*  As discussed above, Petitioner testified that he understood the plea and he entered into it voluntarily.  Further, it is clear that Petitioner benefited greatly from the plea agreement since he pleaded guilty to five counts in exchange for the dismissal of five counts and his sentencing exposure was reduced greatly as a result.  RP. 80-84.  As such, the circumstances surrounding the plea do not

suggest that Petitioner would have gone to trial and his conclusory allegation that he would have insisted on going to trial had Ms. Rhinehart moved for a change of venue is insufficient. *Champion*, 262 F.3d at 1072. Petitioner has failed to meet his burden under the prejudice prong of the *Strickland* test and the state court decision on the merits, though somewhat cursory, shall be given deference as Petitioner has failed to show through clear and convincing evidence that the state court decision contravenes federal law as required by 28 U.S.C. § 2254 and the AEDPA. *Aycox*, 196 F.3d at 1177-78. Therefore, I recommend that the petition for writ of habeas corpus with regard to Petitioner's claims of ineffective assistance of counsel regarding Ms. Rhinehart's failure to examine potential defenses, her failure to research relevant law and facts, her failure to file a motion for change of venue, and both Ms. Rhinehart's and Mr. Bustamante's failure to interview witnesses be denied.

**Grand Jury Deficiencies**

37.     Petitioner claims there were alleged deficiencies in the grand jury process.[7] As noted above,  a federal court owes deference to a summary decision by a state court if the decision was reached on substantive grounds, unless the state court decision contravenes clearly established federal law. *See Aycox*, 196 F.3d at 1177-78;  *See, e.g. Van Woudenberg*, 211 F.3d at 569. Petitioner's claim as to deficiencies in the grand jury process were disposed of in Petitioner's first two state habeas petitions in the same manner as the ineffective assistance of counsel claims; "these issues were fully presented to the Court [during the hearing for Petitioner's Motion to Withdraw Plea] . . . and the Court found no merit in the allegations." Answer Ex. Z, RP 293-294. In the final state habeas

---

[7] The Court will not address the issue of procedural default, as it has not been raised by Respondent. The Tenth Circuit has pointed out, "[Repsondent's]complete failure to assert the procedural bar defense weighs heavily against its *sua sponte* enforcement." *United States v. Wiseman*, 297 F.3d 975, 980 (10th Cir. 2002).

petition, Petitioner's claim of deficiencies in the grand jury process were again dismissed as "frivolous" and without merit. Answer Ex. BB, RP 410-11.  The state court treated Petitioner's claim on the merits.  As such, the state court decision shall be given deference unless the it contravenes clearly established federal law.  *Aycox*, 196 F.3d at 1177-78.  Respondents correctly note in their Motion to Dismiss that Petitioner has no federal constitutional right to indictment by grand jury and any irregularities in the grand jury process were waived as a result of his pleas to the substantive offenses.  *Minner v. Kerby*, 30 F.3d 1311, 1318 (10th Cir. 1994), *and Reed v. Hannigan*, 295 F.3d 1061, 1064 (10th Cir. 2002).  As such, Petitioner fails to show through clear and convincing evidence that the state court decision contravenes federal law.  28 U.S.C. § 2254(e)(1).  Therefore, I recommend that the petition for writ of habeas corpus with regard to Petioner's claims of various deficiencies in the grand jury process be denied.

**Bond Forfeiture**

38.     To the extent that Petitioner claims Ms. Rhinehart was ineffective for not pursuing the issue of his violation of bond while on release of condition of bond and the subsequent bond forfeiture[8], this court finds that for purposes of habeas corpus he was in custody.  *See  Dry v. CFR Court of Indian Offenses for the Choctaw Nation*, 168 F.3d 1207, 1208 (10th Cir. 1999), *and Hensley v. Municipal Ct.*, 411 U.S. 345, 345-46 (1073).  In my view, once Petitioner was found guilty pursuant to his plea and sentenced by Judge Brennan (RP 92-94), while Petitioner *was* in

---

[8] The issue of bond forfeiture is not appropriate for habeas corpus review as it does not raise an issue of constitutional right.  Petitioner has an adequate remedy pursuant to the rules and procedures set forth in Rule 5-401 et seq. N.M.R.Crim.P. (2004).

custody, he was no longer in custody *under bond or conditions of release pending trial*.  Therefore this matter is moot and is not cognizable under 28 U.S.C. § 2254.

### Recommended Disposition

I recommend that Respondent's Motion to Dismiss be **GRANTED** that the Petition be **DISMISSED WITH PREJUDICE.  I further recommend that all of Petitioner's claims pursuant to 42 U.S.C. § 1983 be dismissed without prejudice for failure to exhaust adminsistrative remedies.**  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW Albuquerque, NM 87102.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.


_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**